# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**MILWAUKEE POLICE ASSOCIATION,**
**MELISSA RAMSKUGLER and JUSTIN SOLSVIG,**

               Plaintiffs,

               Case No. 09-C-1192

   -vs-

**BOARD OF FIRE & POLICE COMMISSIONERS**
**OF THE CITY OF MILWAUKEE, EDWARD**
**FLYNN and the CITY OF MILWAUKEE,**

               Defendants.

---

# DECISION AND ORDER

Probationary police officer Melissa Ramskugler (Ms. Ramskugler or Officer Ramskugler) was terminated by the Milwaukee Police Department (MPD) Chief of Police during her probationary period. Ms. Ramskugler contends that her termination without a hearing deprived her of her property interest in her job without due process of law.

On cross-motions for summary judgment, Ms. Ramskugler moves the Court to issue a Writ of Certiorari directing that: (1) Officer Ramskugler be returned to the payroll forthwith; (2) Officer Ramskugler be provided with the pay and benefits withheld since being removed from the payroll; (3) Chief of Police Edward Flynn issue, file and serve a complaint with the Board of Fire & Police Commissioners of the City of Milwaukee (the Board) identifying the facts supporting his decision to discharge Officer Ramskugler; (4) the Board conduct a hearing that comports with due process, and determine whether there was just

cause for Officer Ramskugler's discharge; and (5) Officer Ramskugler's pay and benefits continue until such time as the Board finally disposes of her appeal from discharge by providing that due process hearing.

For the reasons that follow, Ms. Ramskugler's motion is denied, the defendants' motion is granted, and this matter is dismissed in its entirety.[1]

## BACKGROUND

When a person is appointed as a Recruit Police Officer at the MPD, s/he is appointed in a probationary status to the Training Academy for a 23-week period of intensive training. This period of training includes, but is not limited to, Academics, Physical Training, Defense and Arrest Tactics (DAAT) and Firearms Training. A recruit may be appointed from an eligible list for Police Officers or from the rank of Police Aides who have satisfactorily completed a Police Aide program. The Physical Training and the Defensive Arrest Tactics components of Recruit Training require that recruits be capable of participating in a physically rigorous course of activity.

DAAT training, which is mandated by the Wisconsin Department of Justice Law Enforcement Standards Board (LESB), constitutes a large portion of Recruit Training. While the LESB mandates a certain amount of training, the MPD Training Division supplements and requires more extensive training than that minimally required by the LESB, including 400 more hours of training at the Academy, and additional required Field Training. Upon

---

[1] Another probationary police officer, Justin Solsvig, was named in the amended complaint. The defendants moved for summary judgment on Solsvig's claims, but Solsvig did not respond, and Solsvig did not move for summary judgment along with Ms. Ramskugler. Therefore, the defendants' motion for summary judgment will be granted as to Mr. Solsvig.

-2-

entering the Academy, recruits are expected to complete mandated training Phases I, II and III in probationary status. Upon graduation from the Academy, there is a request made by the Department on behalf of the recruit to be certified by the LESB, which is typically done by the LESB on a quarterly basis.

After graduation, the probationary police officer continues in probationary status as an "Officer in Training" through mandated Field Training Phases IV and V, and in the title of "Probationary Officer" through mandated Field Training Phase VI. Neither graduation nor certification by the LESB means that the probationary officer is adequately or fully trained or qualified yet to be a regular police officer with the MPD. Becoming a regular police officer only happens upon the successful completion of all of the Field Training. Probationary police officers, whether a Recruit Officer, Officer-in-Training, or Probationary Officer, serve a total probationary period of Sixteen (16) months. Participation in the phases of training by probationary police officers is an essential pre-requisite to continued employment as a Police Officer, and successful completion of all of the phases is required to be appointed as a regular employee.

By labor contract, Fire and Commission Rule, and Police Department Procedure, a police officer in probationary classification is expected to complete 16 months of probation in actual active service and training before being classified as a regular employee. Pursuant to the labor contract, probationary police officers have no grievance rights regarding discipline or discharge while in the Academy or as a recruit, and have no grievance rights regarding matters of discharge during all phases of the required Field Training.

Ms. Ramskugler started as a probationary police recruit in the MPD Police Academy on October 8, 2007. On October 11, 2007, approximately 3 days into recruit training, she sustained a duty-related injury to her right knee. She was temporarily removed from the class and placed in another area of the Department where she performed clerical duties for approximately one month. On November 5, 2007, she required surgery to the injured area and was allowed to take leave for 2 ½ months. She returned to the performance of clerical duties in a restricted capacity for a period of 3 months. She was medically cleared for duty on April 8, 2008, but remained temporarily assigned to clerical duties pending the next scheduled recruit class at the Academy. As of April 8, 2008, she had only had three days of training at the police academy and was not qualified to do any type of police work.

On June 8, 2008, Ms. Ramskugler was re-appointed to a second recruit class. From October 11, 2007 through June 7, 2008, she did not participate in actual active service as a probationary police officer. On July 17, 2008, the Chief, by his designee, wrote a letter to the Board requesting that Ms. Ramskugler's probationary time as an original acceptance appointee be extended through October 14, 2009 because she had participated in approximately 35 days of actual active service and training instead of the required 16 months. Chief Flynn advised the Board of Ramskugler's re-entry into the recruit class on June 8, 2008. Notice of the request for probation extension was submitted to Ramskugler and her union consistent with the requirements of the collective bargaining agreement. On July 24, 2008, the Board considered the request to extend Officer Ramskugler's probationary period and approved the extension until October 14, 2009.

In her second recruit class, Ms. Ramskugler re-injured the same knee and, while in a restricted capacity, remained assigned to the class until her graduation on November 14, 2008. Officer Ramskugler's name was submitted by the Department to the LESB for certification and approved by the State. Ms. Ramskugler completed the necessary physical training and DAAT training prior to her graduation from the MPD recruit academy. After graduation, she completed approximately 25 days of the required Phase IV Field Training. On December 22, 2008, she began a 34 day leave of absence pending a second surgical procedure on the re-injured knee. On January 27, 2009, she returned to work to perform clerical duties consistent with her restrictions but was unable to resume the required training. The Chief terminated Ms. Ramskugler effective June 11, 2009 pursuant to Milwaukee Police Department Rule 4, Section 2/335.00[2] and Fire and Police Commission Rule XI, Section 7.(a).[3]

---

[2] Rule 4, Section 2/335.00 states:

> All original appointments to the Police Department shall be for a probationary period, continuation in the service being dependent upon the conduct of the appointees and their fitness for the performance to which assigned, as indicated by reports of their supervisory officers and by reports of Department designated medical examiners. If, during that period, members prove unsatisfactory, their services from the Department shall be terminated, and they shall not be entitled to an appeal to the Board of Fire and Police Commissioners from such disposition.

[3] Board Rule XI, Section 7 provides:

> Original entrance appointees to Police Officer or Firefighter and persons not eligible for reinstatement to these positions who are re-employed in either department shall be on probation for an aggregate of 16 months of actual active service. All other appointees shall be on probation for one year unless otherwise specified by the Board, City Ordinance or a collective bargaining agreement. If during the probationary period, the appointee proves unfit for the position, the Chief may discharge the appointee. A full written statement of the reasons for the discharge must be filed with the Board within five (5) days of the discharge. There shall be no appeal from this discharge. If the probationary period is completed in a satisfactory manner, the appointee shall then be

(continued...)

The Chief terminated Ramskugler's probationary appointment because she was unable to proceed with required training at that time and this prevented her from satisfactorily completing probationary training and from performing the essential functions of the job. On June 15, 2009, Officer Ramskugler filed a notice with the Board requesting a due process review hearing. The Board denied her request, stating that "Ms. Ramskugler was terminated from probationary employment for non-disciplinary reasons. It is a personnel action that is not appealable to the Fire and Police Commission."

The Chief's written statement was heard by the Board in open session on July 16, 2009. At that meeting, Ramskugler requested reinstatement. The Chief submitted a written recommendation regarding Ms. Ramskugler's request for reinstatement. Ramskugler's request for reappointment was heard by the Board on February 18, 2010. At the February 18, 2010 hearing, after hearing from Ms. Ramskugler and Chief Flynn, the reappointment request was denied by the Board.

## ANALYSIS

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The plain language of the rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

---

[3](...continued)
classified as a regular employee.

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is appropriate only if, on the record as a whole, a rational trier of fact could not find for the non-moving party. *Rogers v. City of Chi.*, 320 F.3d 748, 752 (7th Cir. 2003).

A procedural due process claim consists of the following elements: a cognizable property interest, a deprivation of that interest, and a denial of due process. *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010). A property interest in continued employment can be created by an independent source such as state law securing certain benefits, or by a clearly implied promise of continued employment. *Phelan v. City of Chicago*, 347 F.3d 679, 681 (7th Cir. 2003). In the context of public employment, the plaintiff must establish a legitimate claim of entitlement to continued employment except for cause. *Palka*, 623 F.3d at 452 (citing *Lee v. County of Cook*, 862 F.2d 139, 141 (7th Cir. 1988)). "A person's interest in a benefit, such as continued employment, constitutes 'property' for due process purposes only if 'there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit.'" *Covell v. Menkis*, 595 F.3d 673, 675-76 (7th Cir. 2010) (quoting *Border v. City of Crystal Lake*, 75 F.3d 270, 273 (7th Cir. 1996)).

Section 62.50, Wis. Stats., governs police and fire departments in cities (like Milwaukee) with populations over 150,000, also known as "1st class cities." Wis. Stat. § 62.05(1)(a). First Class cities are required by statute to create a board of fire and police commissioners. Wis. Stat. § 62.50(1h). The Board, in turn, is granted rule-making authority by the legislature. §§ 62.50(3)(a), (b). Pursuant to this authority, the Board enacted Board

-7-

Rule XI, Section 7. The Rule provides, in pertinent part, that "[o]riginal entrance appointees to Police Officer . . . shall be on probation for an aggregate of 16 months of actual active service." The Rule further provides that the Chief can discharge an appointee during the probationary period if the appointee proves unfit for the position, and there "shall be no appeal from this discharge." It is undisputed that Ms. Ramskugler was discharged before she completed her probationary period because she was deemed unfit for the position of police officer.

Ms. Ramskugler argues that Rule XI, Section 7 is invalid because it conflicts with the specific provisions in the balance of § 62.50. For example, § 62.50(11) provides that "[n]o *member of the police force* or fire department may be discharged or suspended for a term exceeding 30 days by the chief of either of the departments except for cause and after trial under this section." The remaining provisions govern the procedures for a trial before the Board, §§ 62.50(16), (17), salary during suspension, § 62.50(18),[4] and circuit court review. § 62.50(20). These provisions repeat the phrase "member of the force" or "member of the police force." § 62.50(12) (Trial to be ordered) ("Whenever complaint against any member of the force of either department is made to the chief thereof, the chief shall immediately communicate the same to the board of fire and police commissioners and a trial shall be ordered by the board under this section"); § 62.50(13) ("chief discharging or suspending for a period exceeding 5 days any member of the force shall give written notice of the discharge

---

[4] When Ms. Ramskugler was discharged, § 62.50(18) guaranteed continued pay and benefits to discharged officers pending a due process review hearing. *Milwaukee Police Ass'n, Local 21 v. City of Milwaukee*, 757 N.W.2d 76, 79 (Wis. Ct. App. 2008). It was later amended to apply only to suspensions.

-8-

or suspension to the member . . .").  Essentially, Ms. Ramskugler argues that she was a "member of the police force" entitled to a for cause hearing prior to her discharge pursuant to § 62.50(11), and the Board cannot change that fact through its rule-making authority.

The legislature can explicitly or implicitly authorize an administrative agency to promulgate certain rules.  *Seider v. O'Connell*, 612 N.W.2d 659, 676 (Wis. 2000).  To determine whether the Board was authorized to promulgate Rule XI, Section 7, the Court must examine the plain language of the enabling statute.  *Castaneda v. Welch*, 735 N.W.2d 131, 140 (Wis. 2007).  The Court should consider a particular statutory section in relation to the whole statute and also to related sections.  *Conway v. Bd. of Police and Fire Com'rs of City of Madison*, 662 N.W.2d 335, 342 (Wis. 2003).  Words and phrases are given their common and approved meaning, and the Court may consult a dictionary if necessary.  If the rule matches the statutory elements, then the statute expressly authorizes the rule.  However, the enabling statute need not spell out every detail of a rule in order to expressly authorize it; if it did, no rule would be necessary.  *Id.* at 342-43.

In a first class city, the Board is authorized to "prescribe rules for the government of the members of each department."  § 62.50(3)(a).  The Board is also required to "adopt rules to govern the selection and appointment of persons employed in the police and fire departments of the city" that are "designed to secure the best service for the public in each department" and that "provide for ascertaining, as far as possible, physical qualifications, standing and experience of all applicants for positions . . ." § 62.50(3)(b).  Finally, the Board may enact rules that "provide for the competitive examination of some or all applicants in

-9-

such subjects as are deemed proper for the purpose of best determining the applicants' qualifications for the position sought" and which "provide for the classification of positions in the service and for a special course of inquiry and examination for candidates for each class." *Id*. The use of probation, long recognized in Wisconsin as an important part of the hiring process for police officers, is expressly authorized by the foregoing provisions. "There is no doubt that the use of a probationary period is an excellent means of examining candidates and is well-suited to securing the best service available. It enables the board to better evaluate a potential officer's skill and character. Probation is a continuation of the hiring process." *Kaiser v. Bd. of Police and Fire Comm. of the City of Wauwatosa*, 311 N.W.2d 646, 649 (Wis. 1981); *see also Kraus v. City of Waukesha Police and Fire Comm'n*, 662 N.W.2d 294, 302 (Wis. 2003) ("Probation is a form of examination, and one that is highly effective in the realm of law enforcement. It allows chiefs and PFCs to ascertain whether newly placed subordinates are suited for the positions for which they have been selected").

The question then becomes whether the Board exceeded its statutory authority. A rule exceeds an agency's statutory authority if it contradicts either the language of a statute or the intent of the legislature. If a conflict arises between a statute and an administrative rule, the statute prevails. *Castaneda*, 735 N.W.2d at 143. As noted, Ms. Ramskugler argues that Rule XI, Section 7's provision for discharge without trial or an appeal during her 16-month probationary period conflicts with the statutory mandate that "[n]o member of the police force . . . may be discharged or suspended . . . except for cause and after trial under this

section." § 62.50(11). This argument presumes that Ms. Ramskugler was a "member of the police force" even though she was a probationary employee. Ms. Ramskugler is mistaken.

The term "member of the police force" has no specific statutory definition. Ramskugler argues that she was a "member of the police force" because she was a "law enforcement officer," defined by statute as "any person employed by the state or any political subdivision of the state, for the purpose of detecting and preventing crime and enforcing laws or ordinances and who is authorized to make arrests for violations of the laws or ordinances that the person is employed to enforce." Wis. Stat. § 165.85(2)(c). Ms. Ramskugler did graduate from the MPD's training academy, after which time she was certified as a "law enforcement officer." Wis. Stat. § 165.85(4)(b). But it does not follow that Ms. Ramskugler was a "member of the police force" pursuant to § 62.50. The dictionary definition of "member" is "one of the individuals composing a group." *Merriam-Webster Online Dictionary* (2011), http://www.merriam-webster.com/dictionary/member; *see also Webster's Third New International Dictionary* (1986) (defining member as "one of the individuals composing a society, community, association or other group"). Ms. Ramskugler was not one of the individuals composing a group (i.e., the "police force" in the City of Milwaukee) unless and until she successfully completed 16 months in active service. The statute governing general law enforcement standards "does not preclude any law enforcement agency from 'setting recruit training and employment standards which are higher than the minimum standards set by the board.'" *Kraus*, 662 N.W.2d at 300 (citing Wis. Stat. § 165.85(4)(e)).

Ms. Ramskugler also argues that in 1986, the legislature amended a variety of statutes to exempt officers in a probationary classification from due process appeal rights. Wis. Stats. §§ 62.13(6m), 60.56(a)(am) and 61.65(1)(am). Since the legislature did not similarly amend § 62.50 to create a "probationary carve-out," the argument goes that the legislature would not allow extension of the probation period beyond the standard certification requirements under Wisconsin law. § 165.85(4)(b)1. This does not follow because § 62.13(6m) (cities with a population of less than four thousand), § 60.56(1)(am) (town police departments), and § 61.65(1)(am) (village police departments) apply to municipalities without a police and fire commission. By contrast, the general statute governing police and fire departments in cities other than first class cities (Wis. Stats. § 62.13) requires the establishment of a board of police and fire commissioners. § 62.13 does not mention probation, but the "authority to use probationary periods as part of the appointment process is not undermined by the absence of specific language regarding probation in Wis. Stat. § 62.13(4). Numerous management tools integrally related to appointment, such as interviews, references, and letters of recommendation, are not expressly enumerated in that statute. These tools are not forbidden simply because they are not enumerated." *Kraus* at 303. Similarly, the legislature's failure to explicitly eliminate due process rights for probationary employees in § 62.50 says nothing about the authority of the Board to promulgate rules pertaining to the same.

Ramskugler relies on *Castaneda*, where the Supreme Court held that a series of rules implementing the citizen complaint procedure in § 62.50(19) were invalid because they contravened the intent of the statute. "If the Board wants to promulgate a rule, it should craft

-12-

a rule that better reflects the purpose intended by the legislature of providing persons with serious grievances against a member the right to present those grievances at a public trial." 735 N.W.2d at 150. *Castaneda* is easily distinguishable for the reasons already stated. Here, the purpose of the legislature was to create a property interest in continued employment for police officers who are "members of the police force," not to create a property interest for probationary employees. If anything, the legislature's use of the phrase "member of the police force" acknowledges the Board's authority to establish the contours of employment rights for police officers in first class cities. Rule XI, Section 7 can be harmonized with § 62.50 by interpreting the phrase "member of the police force" to exclude those individuals who have not satisfied the requirements of the rule. Such an individual is merely an appointee, not a member of the police force.

Accordingly, pursuant to Board Rule XI, Section 7, Ms. Ramskugler had no more than a unilateral expectation in continued employment as a police officer with the City of Milwaukee. *Bd. of Regents v. Roth*, 508 U.S. 564, 577 (1972). "Clearly, Wisconsin courts have concluded that state law provides no legitimate expectation of employment on behalf of a probationary police officer. In line with those decisions, this Court hereby finds that the plaintiff in this case did not have a protected property interest in her job, and that procedural due process provisions do not apply . . ." *Ratliff v. City of Milwaukee*, 608 F. Supp. 1109, 1129 (E.D. Wis. 1985).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Plaintiffs' motion to submit an additional affidavit [D. 40] is **GRANTED**;

2. Plaintiffs' motion for summary judgment and for certiorari [D. 24] is **DENIED**;

3. Defendants' motion for summary judgment [D. 16] is **GRANTED**; and

4. This matter is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 23rd day of May, 2011.

                                        **BY THE COURT**

                                        *s/ Rudolph T. Randa*
                                        **HON. RUDOLPH T. RANDA**
                                        **U.S. District Judge**